

**FILED**

AUG 2 4 2023

Clerk, U.S. District Court
Eastern District of Texas

From the Desk of Adnan Umair Janjua
and Uzma Janjua
11713 Meridian Dr.
Frisco, Texas [75035]
Phone: 214-727-3373
E-mail: AJANJUA@GMAIL.COM

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF TEXAS

ADNAN UMAIR JANJUA-VESSEL ) Case no: 4:23 cv766 ALM/KPJ
By Adnan Umair Janjua )
and )
UZMA JANJUA-VESSEL )
By Uzma Janjua )
) **Civil Rights Violation Complaint**
) **Under FCRA 15 U.S.C. § 1681**
Plaintiff(s), *ProSe'* ) **Under FDCPA 15 U.S.C. § 1692**
*vs.* )
) **Trial by Jury Demanded**
JAY BRAY, and /or his )
successor, individually, and in his official )
capacity as CEO of NATIONSTAR MORTGAGE,)
LLC DBA MR. COOPER, an *ens legis being* )
*used to conceal fraud,* )
)
CHRISTOPHER MARSHALL, and /or his )
successor, individually, and in his official )
capacity as CFO of NATIONSTAR MORTGAGE,)
LLC DBA MR. COOPER, an *ens legis being* )
*used to conceal fraud* )
)
NATIONSTAR MORTGAGE, LLC )
DBA MR. COOPER, an *ens legis being* )
*used to conceal fraud* )
Its Successors and/Or Assigns )
)
Defendants, )
)
BARRET DAFFIN FRAPPIER )
TURNER & ENGEL, LLP, an *ens legis being* )
*used to conceal fraud* )
Its Successors and/Or Assigns )

Co-Defendants

## COMPLAINT

COMES NOW THE PLAINTIFF'S Adnan Umair Janjua and Uzma Janjua hereinafter "The Plaintiff(s)" or "Plaintiff(s)", sues Defendants JAY BRAY, CEO, CHRISTOPHER MARSHALL, CFO & NATIONSTAR MORTGAGE, LLC, DBA MR. COOPER hereinafter "The Defendant" or "Defendant' and sues Co-Defendant BARREETT DAFFIN FRAPPIER TURNER & ENGEL, LLP hereinafter "The Co-Defendant" or "Co-Defendant" and alleges that all times material:

That this is a civil action brought under the Fair Debt Collection Practices Act FDCPA, 15 U.S.C. § 1692 *et seq.* and The Fair Credit Reporting Act FCRA 15 U.S.C. § 1681, *et seq.* in which the Court has federal question jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 15 U.S.C. § 1681p which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy." This court has jurisdiction under 28 U.S.C. § 1331.

## VENUE

Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendant and Co-Defendant do business in the District and all acts necessary or precedent to the bringing of this lawsuit occurred or accrued in or around Collin County, Texas.

## PARTIES

The Plaintiffs who are natural persons living on the land at all times in the State of Texas and County of Collin, as defined by the Fair Debt Collection Practices Act FDCPA, 15 U.S.C. § 1692a(3).

Defendant is a mortgage servicer and is licensed in the State of Texas as a corporation whose principal office is located at 8950 Cypress Waters Blvd., Coppell, Texas 75019.

2

Co-Defendants are licensed in the State of Texas as a corporation whose principal office is located at 4004 Belt Line Road, Suite 100, Addison, TX 75001.

Defendant and Co-Defendant each acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers in an attempt to collect an alleged consumer debt from Plaintiff.

### PLAINTIFFS STATEMENT OF CLAIM UNDER FCRA AGAINST DEFENDANT

Defendant is a credit lender and as such governed under the law by The Fair Credit Reporting Act 15 USC §1681, *et seq.* and also reports these accounts to the national credit reporting agencies i.e. Trans Union, Equifax and Trans Union, Experian and Innovis all national credit reporting agencies. The State of Texas abides by and adheres to these laws and specifically the Fair Credit Reporting Act § 618 15 USC §1681p, *et seq.*

Defendant in this matter is not only a credit lender a mortgage servicer but also are either "debt collectors" or qualifies as "debt collectors" or were acting as "debt collectors" within the meaning of the Fair Debt Collection Practices Act FDCPA, 15 U.S.C. § 1692a(6) collecting debts.

Defendant communicated to client by notice in a certified letter dated March 3, 2023 that **"Nationstar Mortgage LLC d/b/a Mr. Cooper is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."**

Thus, Defendant is governed under the laws by The Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.*

On or about December 23, 2019 the Plaintiffs purchased a home located at 11713 Meridian Dr. Frisco, Texas, 75035 hereinafter "the Property" and the servicer of the home loan was On Q Financial Inc. The Plaintiffs was never in arrears or late in making the payments with On Q Financial. Approximately one year later the mortgage was transferred to a new company called

3

Rushmore Loan Management Service and Plaintiffs made all monthly payments on time.

On or about December 2, 2022, the mortgage was then transferred to Defendant in the action from Rushmore Loan Management Services LLC. The Plaintiffs never requested nor had nothing to do with these transfers but it was conducted by On Q Financial to Rushmore Loan Management then from Rushmore Loan Management to the Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper.

- *Things taken or captured by pirates and robbers do not change their ownership*
- *When a man has the possession as well as the right of property, he is said to have jus duplicatum – a double right, forming a complete title.*
- *Every man's house is his castle*
- *A maxim is so called because its dignity is chiefest, and its authority most certain, and because universally approved of all*

The Defendant initially emailed the Plaintiff a message on November 21, 2022 **(EXHIBIT P1)** notifying the Plaintiffs that their mortgage was transferring to Mr. Cooper soon and that the Plaintiff will officially be a Mr. Cooper customer starting December 2, 2022. The Plaintiffs have never applied for or has knowledge of having any contractual agreement for credit or loans with the Defendant and was uncertain if Defendant had the title to their note.

Most importantly, Plaintiffs wanted to know that their payments would be applied to the rightful owner of the note so that no future claims can be made against their home. This property is Plaintiffs primary domicile and has lived in the property since the property was first purchased in December of 2019.

In a letter dated February 13, 2023 Plaintiff wrote and delivered a letter by way of registered mail asking the Defendant to produce the contract between Plaintiff and Defendant. Defendants responded in a non-certified letter dated February 21, 2023 telling the defendants that there was

now a contract between Defendant and Plaintiff due to the transfer between servicers.

Plaintiffs served an administrative notice to Defendants dated June 10, 2023 and one dated June 13, 2023 **(EXHIBIT P2)** requesting **Validation of Debt/Proof of Claim Request, RESPA Qualified Written Request, Dispute of Debt under FDCPA and TILA Request**. In this letter Plaintiffs demanded that the Defendant provide evidence that the Defendants that the Defendants were the Rightful Owner of the debt, Real Party In Interest, Person Entitled to Enforce, and Holder in Due Course of the Tangible Promissory Note with the loan and that no other party may lay claim against the property.

Defendant responded back with a non-certified letter dated June 28, 2023 **(EXHIBIT P3)** stating in one of many sentences within the letter:

*"The correspondence you sent in **has no legal validity** and as such ….your correspondence is not a valid request under the Real Estate Settlement Procedures act (RESPA)…, or the Fair Debt Collection Practices Act (FCCPA) 15 U.S.C. § 1692g. Nationstar Mortgage, LLC DBA Mr. Cooper is the holder of the Note and Mortgage and as such can enforce all rights under those documents. These rights include the rights to collect payments, assess fees and charges, and proceed with foreclosure. As such, we will continue to service the loan according to its status and will report the invalid documents received to the appropriate authorities."*

Defendants stated that Plaintiffs administrative notice did not have any legal validity implying to the Plaintiff that the Plaintiffs request for Validation of Debt/Proof of Claim Request, RESPA Qualified Written Request, Dispute of Debt under FDCPA and TILA Request implying to Plaintiff that Defendant isn't subject to the Administrative Procedures Act or any of the laws within the aforementioned acts and suggests to the Plaintiffs that Defendants have a immunity from the laws that govern a Validation of Debt/Proof of Claim Request, RESPA Qualified Written Request a TILA Request and specifically from a Dispute of Debt under the FDCPA and violations of the FCRA.

Defendant is currently claiming a current right to ownership when stating in the letter

*"Mr. Cooper is the holder of the Note and Mortgage and as such can enforce all right under those*

5

*documents."*

However, Defendant has failed to produce any evidence to the Plaintiff that they are in fact the holder of the note in due course and has failed to produce any evidence that supports their claim of ownership.

Plaintiffs served another administrative notice dated July 17, 2023 **(EXHIBIT P4) Good Faith Discovery Notice and Second Request of Documentation and Proof of Claim** in a second attempt to give Defendant the opportunity to provide evidence of the following that Defendants:

1. Have Proof of Claim
2. Were in fact the Note Holder in Due Course
3. Have standing as a Party of Interest in the Promissory Note
4. Are a Creditor in loan/Security instrument that is following Generally Accepted Accounting Principles (GAAP) whereby try double-entry book-accounting was performed in issuing the loan, show a debit against the banks assets as a result of the acquisition of the loan via affidavit.
5. Have the "wet-ink signature Tangible Promissory Note" so that Plaintiffs can schedule with Defendants to examine it at a mutually convenient time for authenticity.

Defendant responded back in a letter dated July 26, 2023 **(EXHIBIT P5)** that,

*"We received your correspondence on July 25, 2023 regarding the above referenced loan. We thank you for bringing this matter to our attention.* ***A response will be provided no later than September 5, 2023.***

September 5, 2023 is the day of the scheduled non-judicial foreclosure.

Defendant responded back in another letter dated July 27, 2023 that reads,

*"The correspondence you sent in* **has no legal validity** *and as such ….your correspondence is not a valid request under the Real Estate Settlement Procedures act (RESPA)…, or the Fair Debt Collection Practices Act (FCCPA) 15 U.S.C. § 1692g.* ***Nationstar Mortgage, LLC DBA*** **Mr. Cooper is the holder of the Note** *and Mortgage and as such can enforce all rights under those documents. These rights include the rights to collect payments, assess fees and charges, and proceed with foreclosure.* ***As such, we will continue to service the loan according to*** ***its foreclosure status."***

and,

*"With respect to your demand for the original Note,* ***the original Note is our collateral and will be provided to you upon full repayment of your mortgage loan."***

6

Plaintiff's assert that they have a constitutional standing and have a party of interest standing to ask the Defendant to verify the alleged debt and for Defendant to prove that Defendant is a party of interest in this controversy. Plaintiffs exercised their rights under the Administrative Procedures Act in an attempt to peacefully resolve this matter privately. Plaintiff initially made contact with the Defendant in January and February 2023 **(EXHIBIT P6)** in an attempt to resolve this privately. As fore-mentioned, Defendant has ignored their own obligations that they are required to follow under the Administrative Procedures Act and Defendants have also failed to establish possession of and an ownership interest in the note, they have not provided evidence to Plaintiff to be a real party in interest but Co-Defendant has served Plaintiff  Notice of Acceleration/Notice of [Substitute] Trustee's Sale dated June 20, 2023 **(EXHIBIT P7)** in which Defendant has initiated a non-judicial foreclosure that is scheduled to take place on September 5, 2023. Plaintiffs believe that Defendant and Co-Defendant are attempting to foreclose on the Property by presenting a counterfeit promissory note and counterfeit deed of trust.

The Plaintiff denies ever having any contractual agreement for credit, loans or services relationship with the Defendant. Even if the Plaintiff did have such an agreement, which the Plaintiff denies, the alleged account is not in question here. But the fact as to how it was or was not verified and wrongful actions of the Defendant in inserting erroneous and inaccurate information and failure to indicate the account is in dispute in the Plaintiffs credit reports, violated the civil rights of the Plaintiff and the law as outlined in The Fair Credit Reporting Act 15 USC §1681, *et seq*. Pursuant to the Federal Civil laws of the United States of America, Defendant is prohibited from violations of the Fair Credit Reporting Act.

The Plaintiff requested a copy of his Credit Report from Experian/Equifax and Trans Union on May 30, 2023 **(EXHIBIT P8)** and again June **(EXHIBIT P9)**, July **(EXHIBIT P10)** and August

2023 **(EXHIBIT P11).** The Plaintiff was alerted to this through his credit monitoring service Privacy Guard who also records these transactions.

Upon inspection of the said report the Plaintiff observed that NATIONSTAR MORTGAGE, LLC DBA MR. COOPER was listed on the Plaintiffs Experian and Equifax and Trans Union credit report. Indicating a debt/account due relative to a real estate loan with NATIONSTAR MORTGAGE, LLC DBA MR. COOPER.

The Plaintiff has not now or ever had any business affiliation or relationship with NATIONSTAR MORTGAGE, LLC DBA MR. COOPER and has never applied for any type of mortgage, loan, credit card or insurance or employment reasons with the Defendant.

The Plaintiff contacted the Defendant by U.S. Registered Mail on June 10, 2023 **(EXHIBIT P2),** which the Defendant received on June 12, 2023 **(EXHIBIT P2),** asking for proof of this alleged account. Defendant responded with "*…The correspondence you sent in has no legal validity and as such ….your correspondence is not a valid request…*" Plaintiff served the Defendant another notice in on July 17, 2023 **(EXHIBIT P4)** in another attempt to settle this situation amicably prior to filing this lawsuit.

The Plaintiff has tried every way possible to resolve these issues but Defendant has not sustained the burden of proof privately outside of the courts so the Plaintiff is forced to seek Justice and for the court to intervene in this matter. The derogatory erroneous and inaccurate information still remains on the Plaintiff's Credit report to date. The Plaintiff has requested confirmation/disputed this alleged account with Experian and Equifax and Trans Union and Experian and Equifax and Trans Union have confirmed that they are reporting it correctly as advised to Experian and Equifax and Trans Union by Defendant.

8

The Defendant must also inform notice of dispute to the Major Credit Reporting agencies that the alleged account is in dispute, which the Defendant has not done. The Defendant has continued reporting erroneous and inaccurate information by updating the Plaintiffs credit report for more even after informing the Defendant of this and asking for proof of any account and has done so to-date.

The Defendant is in violation the Fair Credit Reporting Act [15 U.S.C. § 1681s-2], *et seq*. As follows:

1.  Failure to inform the National Credit Reporting Agencies that the alleged account is in dispute and failing to do so from the time Plaintiff first disputed the debt by way of Registered Mail to the Defendants and the Defendants CFO Christopher Marshall who received notice of dispute on June 23, 2023 **(EXHIBIT P2)** and CEO Jay Bray who received notice of dispute on June 23, 2023**(EXHIBIT P2)** and Co-Defendants BARREETT DAFFIN FRAPPIER TURNER & ENGEL, LLP who received notice of dispute on June 26, 2023 **(EXHIBIT P2).**

2.  Updating the Plaintiff's credit report without notifying the credit bureaus that this erroneous and inaccurate information is being disputed by the Plaintiff.

Plaintiff re-alleges the allegations set forth in all preceding paragraph's pages 1 through 9

**COUNT 1**

VIOLATION OF THE FAIR CREDIT REPORTING ACT

According to the Fair Credit Reporting Act, section 623. Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2]:

(a) Duty of furnishers of information to provide accurate information.

(1) Prohibition.

(A) Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer-reporting agency if the person knows or consciously avoids knowing that the information is inaccurate.

9

(B) Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any consumer-reporting agency if (i) **the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate**; and (ii) the information is, in fact, inaccurate.

(2) Duty to correct and update information. A person who

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and

(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) Duty to provide notice of dispute. If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

(b) Duties of furnishers of information upon notice of dispute.

(1) In general. After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];
(C) report the results of the investigation to the consumer reporting agency; and
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(2) Deadline. A person shall complete all investigations, reviews, and reports required under paragraph
(1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [§ 1681i] within which the consumer reporting agency is required to complete actions required by that section regarding that information.

Defendant received NOTICE OF DISPUTE from Plaintiff in June 2023 **(EXHIBIT P2).**

The information from Defendant, Nationstar LLC, dba Mr. Cooper on the Experian/Equifax and Trans Union credit report of Plaintiff does not reflect that the information is disputed by the consumer **(EXHIBITS P8-P11).**

10

According to the Fair Credit Reporting Act, 616. Civil liability for willful noncompliance [15 U.S.C. § 1681n],

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000,

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Plaintiff demands Judgment in the amount of **$12,000.00** for each month the Defendant violated the act by updating the Plaintiff's credit reports with inaccurate and erroneous information.

Plaintiff re-alleges the allegations set forth in all preceding paragraph's pages 1 through 11

**COUNT 2**

VIOLATION OF THE FAIR CREDIT REPORTING ACT

According to the Fair Credit Reporting Act, section 623. Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2]:

(a) Duty of furnishers of information to provide accurate information.

(1) Prohibition.

(A) Reporting information with actual knowledge of errors. A person shall not furnish any information relating to a consumer to any consumer-reporting agency if the person knows or consciously avoids knowing that the information is inaccurate.
(B) Reporting information after notice and confirmation of errors. A person shall not furnish information relating to a consumer to any consumer-reporting agency if
(i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
(ii) the information is, in fact, inaccurate.

(2) Duty to correct and update information. A person who

(A) **regularly and in the ordinary course of business furnishes information** to one or

11

more consumer reporting agencies about the person's transactions or experiences with any consumer; and
(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

(3) **Duty to provide notice of dispute. If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.**

(b) Duties of **furnishers** of information upon notice of dispute.

(1) In general. After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
(A) conduct an investigation with respect to the disputed information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];
(C) report the results of the investigation to the consumer reporting agency; and
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

(2) Deadline. A person shall complete all investigations, reviews, and reports required under paragraph
(1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [§ 1681i] within which the consumer reporting agency is required to complete actions required by that section regarding that information.

Defendant received NOTICE OF DISPUTE from Plaintiff in June 2023 **(EXHIBIT P2).**

The information from Defendant, Nationstar LLC, dba Mr. Cooper on the Experian/Equifax and Trans Union credit report of Plaintiff does not reflect that the information is disputed by the consumer **(EXHIBITS P8-P11).**

Plaintiff demands Judgment in the amount of $1,000.00 for each month for each credit bureau the Defendant has failed to report the alleged account in dispute for the amount of **$12,000.00**

Plaintiff re-alleges the allegations set forth in all preceding paragraph's pages 1 through 12

Plaintiff has notified Defendant multiple times by registered mail that the Plaintiff disputes the

inaccurate information.

Defendant continues to report the alleged debt on the Experian, Equifax and Transunion credit report of Plaintiff to date.

According to the Fair Credit Reporting Act, 616. Civil liability for willful noncompliance [15 U.S.C. § 1681n],

(a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000,

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Plaintiff has had A credit for many years but now Plaintiff has a negative credit score as of this date and has been denied credit at reasonable rates because of the willful noncompliance actions erroneous and inaccurate reporting and/or inaction's of the defendants.

According to the Fair Credit Reporting Act, 617. Civil liability for negligent noncompliance [15 U.S.C. §1681o]

(a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

13

Plaintiff has suffered injury in the form of Defamation of character.

Plaintiff re-alleges the allegations set forth in all preceding paragraph's pages 1 through 14

**WHEREFORE,** the Defendant has violated the Fair Credit Reporting Act, Plaintiff demands judgment in the amount of **$24,000.00** for their violations of the FCRA, plus all costs of this action along with punitive damages in the amount of **$500,000.00** or as the court may allow along with Private Attorney General fees of $3000.00 as prescribed by law Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991), 15 U.S.C. sec. 1692k(a)(3),(see Zagorski v. Midwest Billing Services, Inc., F.3d--- (1997 WL 695401, 7th Cir.) or 128 F. 3d 1164 (7th Cir., 1997) .

## PLAINTIFFS STATEMENT OF CLAIM UNDER FDCPA AGAINST DEFENDANT

### COUNT 1

**Notice to Principal is Notice to Agent, and Notice to agent is Notice to Principal.**

Plaintiff re-alleges the allegations set forth in all preceding paragraph's pages 1 through 14

Defendant communicated to client by notice in a certified letter **(EXHIBIT P12)** dated March 3, 2023 that **"Nationstar Mortgage LLC d/b/a Mr. Cooper is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."**

Defendant in this matter is not only a credit lender, a mortgage servicer, but also are either "debt collectors" or qualifies as "debt collectors" or were acting as "debt collectors" within the meaning of the Fair Debt Collection Practices Act FDCPA, 15 U.S.C. § 1692a(6) collecting debts.

Defendant failed to disclose to the Plaintiff in the very first communication which the Defendant initiated by way of an email dated November 21, 2022 **(EXHIBIT P1)** that "This communication is from a debt collector..."

and the Defendants failed to disclose the mini-Miranda warning in all of Defendants subsequent communications as follows:

14

Second email dated December 2, 2022**(EXHIBIT P13),** Monthly statements mailed to Plaintiff from December to August for a total of eleven written communications **(EXHIBIT P14),** Letter dated February 21, 2023 **(EXHIBIT P15),** Letter dated June 20, 2023 **(EXHIBIT P16),** Letter dated June 28, 2023 **(EXHIBIT P17),** Letter dated July 26, 2023 **(EXHIBIT P18),** Letter dated July 27 2023 **(EXHIBIT P19),** Letter dated July 28, 2023 **(EXHIBIT P20).**

**§ 807. False or misleading representations [15 USC 1692e]**

(11) **The failure to disclose in the initial written communication with the consumer** and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, **and the failure to disclose in subsequent communications that the communication is from a debt collector**, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

NOTE - The Omnibus Appropriation bill (13) which was signed into law on Sept. 30th, 1996 included an amendment to the Fair Debt Collection Practices Act. The amendment requires the debt collector to give the mini-Miranda warning in the initial communication but, in all subsequent communications with the debtor, the debt collector must disclose that ..."This communication is from a debt collector."

This amendment became effective December 31, 1996. Attorneys who are involved either in the collection process or with foreclosures and/or consumer bankruptcies must be alert to their obligations under the Act. Once the first contact has been made with a debtor, a written validation notice must be sent to the debtor, on a one-time basis, within five days (which must also contain the mini-Miranda warning).

Thereafter, all communications with a debtor, whether written or oral, must contain the "mini-

15

Miranda" warning. This includes telephone conversations, correspondence, demand letters, stipulations, notices, discovery, receipts of payment and post-judgment remedies.

NOTE - in accordance with the recent amendment, § 807(11) does not apply to formal legal pleadings made in connection with a legal action.

The Defendant did not comply with the law on nineteen different occasions as fore-mentioned when contacting the Plaintiff by failing to inform the Plaintiff of his rights.

Plaintiff demands judgment for **$19,000.00**

**COUNT 2**

**Notice to Principal is Notice to Agent, and Notice to agent is Notice to Principal.**

Plaintiff re-alleges the allegations set forth in all preceding paragraph's pages 1 through 16.

The Defendant also violated Section **809. Validation of debts [15 USC 1692g]** of the DCPA by not providing proof of the alleged debt as requested by the Plaintiffs letter of June 10 and June 13, 2023 **(EXHIBIT P2)** by continuous collection activity prior to validation of the debt. Defendant mailed statements to Plaintiff for the month of July and August.

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Plaintiff demands judgment for **$2,000.00**

**WHEREFORE,** the defendant has violated the Fair Debt Collection Practices Act, Plaintiff

demands judgment in the amount of $21,000.00, plus all costs of this action along with punitive damages in the amount of $500,000.00.

## PLAINTIFFS STATEMENT OF CLAIM UNDER FDCPA AGAINST CO-DEFENDANT

Plaintiff re-alleges the allegations set forth in all preceding paragraph's pages 1 through 17

Co-Defendant is not only a law firm but a law firm working as debt collector attorneys who are either "debt collectors" or qualifies as "debt collectors" or were acting as "debt collectors" within the meaning of the Fair Debt Collection Practices Act FDCPA, 15 U.S.C. § 1692a(6) collecting debts and have communicated to Plaintiff by certified mail dated June 30, 2023 the following:

*"We have been authorized by the Mortgage Servicer to initiate legal proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan (the Debt")."*

*"THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT"*

Co-Defendant is governed under the law by The Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* and is also governed under the law by The Fair Credit Reporting Act 15 U.S.C. § 1681, *et seq.*

Pursuant to the Federal Civil laws of the United States of America Co-Defendant is prohibited from violations of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.

## COUNT 1

**Notice to Principal is Notice to Agent, and Notice to agent is Notice to Principal.**

On or about May 15, 2023, Co-Defendant wrote a letter **(EXHIBIT P21)** notifying Plaintiffs that Defendant

*"has retained our firm to pursue a nonjudicial foreclosure under a Deed of Trust against the real property that secures a debt you owe to NATIONSTAR MORTGAGE LLC (Mortgagee)."...*

*..." If you write to us by 06/21/2023, we must stop collection on any amount you dispute until we send you information that shows you owe the debt."*

Plaintiffs mailed the same dispute letters as aforementioned to the Co-Defendant **Validation of**

**Debt/Proof of Claim Request, RESPA Qualified Written Request, Dispute of Debt under FDCPA and TILA Request (EXHIBIT P2),** in which Co-Defendant received service by way of Register mail on June 26, 2023 and a **Good Faith Discovery Notice and Second Request of Documentation and Proof of Claim (EXHIBIT P4),** in which Co-Defendant received service by way of Registered mail on July 20, 2023. Co-Defendant responded to both letters, one letter with a date of June 28, 2023 **(EXHIBITS P23)** and one letter with a date of July 21, 2023 **(EXHIBIT P23)** that,

*"This firm cannot accept service of your qualified written request ("QWR") because 12 U.S.C. § 2605 requires that a QWR be sent to the "mortgage servicer" of the mortgage in question."*

This is not a complaint under RESPA, however, even under RESPA, a servicer is prohibited from providing certain information regarding "any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency" during the 60-day period beginning on the date the servicer receives a QWR in which these two notices covered that time period.

The two notices sent **(EXHIBITS P2 & P4)** were also Notices of Dispute of the alleged debt and request to validate the debt. Co-Defendant has failed to validate the debt pursuant to Section 809 Validation of debts [15 USC 1692g] and thus the Co-Defendant also violated this Section by not providing proof of the alleged debt as requested by the Plaintiffs letters dated June 26, 2023 and July 20, 2023 by continuous collection activity prior to validation of the debt.

On June 30, 2023 Co-Defendant sent a NOTICE OF ACCELERATION **(EXHIBITS P23)** to Plaintiff without validating the debt first.

Section 809. Validation of debts [15 USC 1692g]

(b) If the consumer notifies the debt collector in writing within the thirty-day period described in

subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Plaintiff demands judgment for **$1,000.00**

**COUNT 2**

**Notice to Principal is Notice to Agent, and Notice to agent is Notice to Principal.**

Plaintiffs served an administrative notice dated July 17, 2023 **(EXHIBIT P4) Good Faith Discovery Notice and Second Request of Documentation and Proof of Claim** in a second attempt to give Co-Defendant the opportunity to provide evidence of the following that the Co-Defendants:

1. Have Proof of Claim
2. Were in fact the Note Holder in Due Course
3. Have standing as a Party of Interest in the Promissory Note
4. Are a Creditor in loan/Security instrument that is following Generally Accepted Accounting Principles (GAAP).
5. Have the "wet-ink signature Tangible Promissory Note" so that Plaintiffs can schedule with Defendants to examine it at a mutually convenient time for authenticity.

Within this notice, Plaintiffs also notified the Co-Defendant that since they were unable to comply with the initial request and will be in default on their administrative process July 24 2023 that as a matter of courtesy, Plaintiff will extend the proof standing as party of interest request for another 21 days for Co-Defendant to provide Plaintiff with the proof of claim (expiring on August 13, 2023). Plaintiff also noticed Co-Defendant that pursuant to U.C.C.-ARTICLE § 3-301 that failure to provide this proof means that Co-Defendant admits to not being a party of interest and cannot rightfully enforce their claim. Plaintiff also noticed Co-Defendant that Under Title 12 § 226.39

19

(regulation Z) part (a), a servicer does not have the rights of a holder in due course and therefore, do not have the rights to foreclose.

Title 12 § 226.39 Mortgage transfer disclosures.

(a) Scope. The disclosure requirements of this section apply to any covered person except as otherwise provided in this section. For purposes of this section:

(1) A "covered person" means any person, as defined in § 226.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.

Plaintiff has already given 30 days to comply with the request to produce proof of claim by presenting to the Plaintiff for visual inspection of the original wet ink signature promissory note, that Co-Defendant.

The Co-Defendant sent Plaintiff a Notice of Acceleration dated June 30, 2023 **(EXHIBIT P23)** stating that

"*Pursuant to the Servicing Agreement..., the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.*"

And that,

... "*Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt.*" they the Co-Defendants were "*...authorized to initiate legal proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan (the "Debt").*"

And that:

"*On September 05, 2023, as designated on the enclosed Notice of Trustee's Sale, the Trustee, or the Substitute Trustee, will sell at the Courthouse of Collin County, Texas in the area designated by the Commissioner's Court of such County, or if no area is designated by the Commissioner's Court, in the usual and customary place in that County, to the highest bidder for cash, The Real Estate described in the enclosed Notice.*"

However, in the Co-Defendants Letter to Plaintiff dated July 21, 2023 **(EXHIBITS P23)** the Co-Defendant communicated to the Plaintiffs that,

*"Our file is not currently scheduled for foreclosure sale. Please contact our client Loss Mitigation department directly at (888) 480-2432 to discuss options that maybe you."*

Co-Defendants have violated § 807. False or misleading representations [15 USC 1692e] (5) by using false, deceptive, or misleading representations in the communications to Plaintiffs when they have not provided evidence or proof of legal standing or rights to foreclose on Plaintiffs property in their attempt to collect an alleged debt.

**§ 807. False or misleading representations [15 USC 1692e] (5)**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

Plaintiff demands judgment for **$1,000.00**

**WHEREFORE,** the Co-Defendant has violated the Fair Debt Collection Practices Act, Plaintiff demands judgment in the amount of $2,000.00 plus all costs of this action along with punitive damages in the amount of $500,000.00.

**STATEMENT UPON WHICH RELIEF CAN BE GRANTED**

**BETWEEN PLAINTIFF AND DEFENDANT**

1. A settlement agreement between the Plaintiff & Defendant that the Defendant shall remove any derogatory information and inquires from all four major credit-reporting agencies Trans Union, Equifax, Experian and Innovis and any other known credit reporting agencies

NATIONSTAR MORTGAGE, LLC, DBA MR. COOPER, has used now or may use in the future.

2. Defendant must also provide a letter and or Universal Data Form indicating that they have done this and send same to the Plaintiff.

3. The Defendant will be barred now or in the future from selling or transferring of the alleged account to any other lender, collection agency or attorney or entity and also barred now and in the future from re-entering this information into the Plaintiffs credit reports.

4. The Defendant must cease and desist any further collection activities if applicable against the Plaintiff and the Defendant may not sell or transfer the alleged account to any other Collection Agency or Attorney or entity now or in the future.

5. Payment of $24,000.00 for their violations under the FCRA Act and $500,000.00 in Punitive damages or amount as allowed by the Court.

6. Payment of $21,000.00 for their violations under the FDCPA Act and $500,000.00 in Punitive damages or amount as allowed by the Court.

7. Private Attorney General fees must be paid to the Plaintiff

**STATEMENT UPON WHICH RELIEF CAN BE GRANTED**

**BETWEEN PLAINTIFF AND CO-DEFENDANT**

1. The Co-Defendant will be barred now or in the future from selling or transferring of the alleged account to any other lender, collection agency or attorney or entity and also barred now and in the future from entering this information into the Plaintiffs credit reports.

2. The Co-Defendant must cease and desist any further collection activities if applicable against the Plaintiff and the Co-Defendant may not sell or transfer the alleged account to any other Collection Agency or Attorney or entity now or in the future.

3. Payment of $2,000.00 for their violations and $500,000.00 in Punitive Damages or amount as

allowed by the Court.

4. Private Attorney General fees must be paid to the Plaintiff

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby requests a jury trial on all issues raised in this complaint

Respectfully submitted this 24 day of August 2023

by Adnan Umair Janjua, Plaintiff ProSe'
Without Prejudice/Reservation of all Rights

by Uzma Janjua, Plaintiff ProSe'
Without Prejudice/Reservation of all Rights

11713 Meridian Dr.
Frisco, Texas [75035]
Phone: 214-727-3373
E-mail: AJANJUA@GMAIL.COM

23