**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **ADNAN UMAIR JANJUA-VESSEL and UZMA JANJUA-VESSEL,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No. 4:23-cv-766-ALM-KPJ** |
| **JAY BRAY,** *et al.*, | § § § | |
| **Defendants.** | § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are the following motions:

- Defendants Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Nationstar"), Jay Bray ("Bray"), and Christopher Marshall's ("Marshall") (collectively, the "Nationstar Defendants") Motion to Dismiss (the "Nationstar Motion") (Dkt. 13), to which Plaintiffs Adnan Umair Janjua-Vessel and Uzma Janjua-Vessel ("Plaintiffs") filed a response (Dkt. 16), and the Nationstar Defendants filed a reply (Dkt. 20);

- Defendant Barrett Daffin Frappier Turner & Engel, LLP's ("Barrett Daffin") (together with the Nationstar Defendants, "Defendants") Motion to Dismiss for Failure to State a Claim (the "First Barrett Daffin Motion") (Dkt. 15); and

- Barrett Daffin's re-filed Motion to Dismiss for Failure to State a Claim (the "Second Barrett Daffin Motion") (Dkt. 57), to which Plaintiffs filed a response (Dkt. 65), Barrett Daffin filed a reply (Dkt. 67), and Plaintiffs filed a sur-reply (Dkt. 70).[1]

For the reasons that follow, the Court recommends the First Barrett Daffin Motion (Dkt. 15) be

**DENIED AS MOOT**, and the Nationstar Motion (Dkt. 13) and the Second Barrett Daffin Motion

(Dkt. 57) be **GRANTED**.

---

[1] Plaintiffs filed the sur-reply as an "amended response." *See* Dkt. 70. However, Plaintiffs assert they filed the amended response to respond to arguments raised by Barrett Daffin in their reply. *See* Dkt. 69. Accordingly, the Court interprets the amended response as a sur-reply and considers it to the extent that it responds to arguments raised in Barrett Daffin's reply.

# I.    BACKGROUND

## A.    Procedural History

On August 24, 2023, Plaintiffs, proceeding *pro se*, filed a complaint (the "Complaint") (Dkt. 1) against Defendants. Dkt. 1 at 1–2. Plaintiff served summons on Nationstar on September 1, 2023, and on Barrett Daffin on September 5, 2023.[2] *See* Dkt. 11–12. On September 21, 2023, the Nationstar Defendants filed the Nationstar Motion (Dkt. 13), wherein they seek dismissal of Plaintiffs' claims. Dkt. 13 at 8. On September 26, 2023, Barrett Daffin filed the First Barrett Daffin Motion (Dkt. 15), wherein it seeks dismissal of Plaintiffs' claims. *See* Dkt. 15 at 8. On October 11, 2023, Plaintiffs filed their response to the Nationstar Motion (Dkt. 13).

On October 17, 2023, Plaintiffs filed the Motion for Default Judgment (Dkt. 19), wherein Plaintiffs represent that Barrett Daffin did not serve Plaintiffs with a response to the Complaint (Dkt. 1). Dkt. 19 at 2. On June 27, 2024, the Court ordered Barrett Daffin to file a status report explaining if and when it served Plaintiffs with the First Barrett Daffin Motion to Dismiss (Dkt. 15) because the certificate of service accompanying its motion represented that service *will* be made. *See* Dkt 56 at 1–3. On June 28, 2024, Barrett Daffin filed the Status Report on Service of Motion to Dismiss (the "Status Report") (Dkt. 58) and filed the Second Barrett Daffin Motion (Dkt. 57). *See* Dkts. 57–58. In the Status Report (Dkt. 58), Barrett Daffin informed the Court that the First Barrett Daffin Motion (Dkt. 15) was not served on Plaintiffs. Dkt. 58 at 2. Barrett Daffin further represents that the failure to serve Plaintiffs "was not intentional[] and was an accident or mistake"

---

[2] Plaintiffs failed to serve summons on Bray and Marshall within the time proscribed by Federal Rule of Civil Procedure 4(m). On December 19, 2023, the Court ordered Plaintiffs to serve Bray and Marshall. *See* Dkt. 25 at 1. On January 5, 2024, Plaintiffs attempted to serve Bray and Marshall through Nationstar's registered agent. *See* Dkts. 30–32. On January 17, 2024, the Court ordered Plaintiffs to re-effectuate service on Bray and Marshall. *See* Dkt. 33 at 2. On January 18, 2024, Bray and Marshall returned waivers of service to "avoid unnecessary expenses of serving summons" because they had already joined Nationstar in filing the Nationstar Motion (Dkt. 13) and seek the Court's dismissal on that basis. *See* Dkts. 34–36.

and asserts that "[c]ounsel for [Barrett Daffin] was out with Covid-19 on the date this was filed and a former employee was to mail the motion." *Id.* Barrett Daffin finally represents that it re-filed the First Barrett Daffin Motion (Dkt. 15) as the Second Barrett Daffin (Dkt. 57), and that counsel mailed copies of the First Barrett Daffin Motion (Dkt. 15), the Second Barrett Daffin Motion (Dkt. 57), and the Status Report (Dkt. 58) to Plaintiffs by regular mail and email. Dkt. 58 at 2. The certificate of service attached to the Second Barrett Daffin Motion (Dkt 57) also asserts that counsel "sent [a] true and correct copy to all parties" by regular mail and email. Dkt. 57 at 9.

On July 23, 2024, Plaintiffs filed their response to the Second Barrett Daffin Motion to Dismiss (Dkt. 57).[3] *See* Dkt. 65. On July 30, 2024, Barrett Daffin filed a reply to Plaintiffs' response. *See* Dkt. 67. On August 1, 2024, Plaintiffs filed the sur-reply. *See* Dkt. 70.

## B.     The Complaint

On or about December 23, 2019, Plaintiffs purchased a home located at 11713 Meridian Dr., Frisco, Texas 75035 (the "Property"). Dkt. 1 at 3. The Property was purchased pursuant to a mortgage agreement (the "Mortgage"), consisting of a note (the "Note") and a security instrument (the "Security Instrument"), and the original servicer of the Mortgage was On Q Financial Inc. ("On Q Financial"). *See id.* After a year, On Q Financial transferred the Mortgage to Rushmore Loan Management Service ("Rushmore"). *Id.* at 3–4. Plaintiffs contend that during the approximately three years that the Mortgage was serviced by both On Q Financial and Rushmore, Plaintiffs timely made all monthly payments. *See id.*

On November 21, 2022, Plaintiffs received a message from Nationstar stating that the Mortgage was soon to be transferred to Nationstar, and that Plaintiffs would be a Nationstar

---

[3] Plaintiffs filed a Notice & Motion for Leave to File Plaintiffs' Opposition to Co-Defendants Motion to Dismiss (Dkt. 64) regarding their late-filed response to the Second Barrett Daffin Motion to Dismiss (Dkt. 57), which the Court granted. Dkt. 74.

customer beginning on December 2, 2022. *See id.* at 4. On or about December 2, 2022, the Mortgage was transferred to Nationstar. *See id.* Plaintiffs contend that they "never applied for or [had] knowledge of having any contractual agreement for credit or loans with [Nationstar] and [were] uncertain if [Nationstar] had the title to their note." *Id.*

On February 13, 2023, Plaintiffs wrote and delivered a letter by way of registered mail, requesting that Nationstar produce the contract between Plaintiffs and Nationstar. *Id.* On February 21, 2023, Nationstar responded, informing Plaintiffs of the contract between them as a result of the transfer of the Mortgage from Rushmore to Nationstar. *See id.* at 4–5. On June 10, and June 13, 2023, Plaintiffs requested "Validation of Debt/Proof of Claim Request, RESPA Qualified Written Request, Dispute of Debt under FDCPA and TILA Request." *Id.* at 5. On June 28, 2023, Nationstar responded to Plaintiffs' request for validation, confirming that Nationstar is the holder of the Note and Mortgage on the Property, and, as such, can enforce all rights under those documents. *Id.* Nationstar further denied Plaintiffs' requests pursuant to RESPA and the FDCPA because the correspondence had "no legal validity." *Id.*

On May 30, 2023, Plaintiffs requested a copy of their credit report from Experian, Equifax, and Trans Union. *See id.* at 7. Plaintiffs assert that Nationstar was listed on the credit report, "[i]ndicating a debt/account due relative to a real estate loan." *Id.* at 8. Plaintiffs assert that they have not "ever had any business affiliation or relationship with [Nationstar]" and "never applied for any type of mortgage, loan, credit card or insurance or employment reasons with [Nationstar]." *Id.* Plaintiffs further assert that the June, July, and August credit reports included the same Nationstar account. *See id.* at 7–8.

On June 20, 2023, Barrett Daffin served Plaintiffs with the Notice of Acceleration and Notice of [Substitute] Trustee's Sale, which notified Plaintiffs that a non-judicial foreclosure for the Property was scheduled on September 5, 2023. *Id.* at 7.

On July 17, 2023, Plaintiffs "served another administrative notice" requesting Nationstar provide evidence that Nationstar has the "wet-ink signature Tangible Promissory Note." *Id.* at 6. On July 27, 2023, Nationstar responded to Plaintiffs July 17 correspondence, representing that: Plaintiff's request "has no legal validity"; confirming that Nationstar is the holder of the Mortgage; and notifying Plaintiffs that Nationstar "will continue to service the loan according to its foreclosure status." *Id.*; *see also* Dkt. 1-5 at 2–4. Plaintiffs assert that Nationstar was required to report that "the account is in dispute in the Plaintiffs['] credit reports" pursuant to Plaintiffs' correspondence with Nationstar requesting validation of the debt. Dkt. 1 at 7. Plaintiffs further assert that they "requested confirmation/disputed this alleged account with Experian and Equifax and Trans Union," and the credit reporting agencies "confirmed that they are reporting it correctly" as advised to them by Nationstar. *Id.* at 8.

Based on these allegations, Plaintiffs assert violations of the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Practices Act ("FDCPA"). *See id.* at 14–21.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual

inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, and any document attached to the motion to dismiss that is central to the claim and referenced by the complaint. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.    ANALYSIS

Before addressing the merits of the motions currently pending before the Court, the Court finds that the First Barrett Daffin Motion (Dkt. 15) and the Second Barrett Daffin Motion (Dkt. 57) are identical. *See* Dkts. 15; 57. Thus, the First Barrett Daffin Motion (Dkt. 15) should be denied as moot. The Court addresses the arguments raised in the Second Barrett Daffin Motion (Dkt. 57) below.

**A.      The FCRA Claims**

In the Complaint (Dkt. 1), Plaintiffs allege that Defendants, as furnishers of information, have violated Section 1681s-2 of the FCRA.[4] *See* Dkt. 1 at 9–14. The FCRA, 15 U.S.C. § 1681, "creates various obligations on 'furnishers of information' to provide accurate information to consumer credit reporting agencies [("CRAs")]." *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 794 (N.D. Tex. 2014) (footnote omitted) (first quoting *Smith v. Nat'l City Mortg.*, No. 09-cv-881, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010); and then citing 15 U.S.C. § 1681s-2). Specifically, upon receiving notice of a dispute from a CRA, the furnisher is required to:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a [CRA] only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

---

[4] The Court broadly interprets Plaintiffs' allegations in the Complaint (Dkt. 1) to include allegations of violations against all Defendants, despite Plaintiffs' allegations only referencing "Defendant" and more particularly "Defendant, Nationstar" in setting forth the counts comprising their causes of action. *See* Dkt. 1 at 9–14.

"Although the Fifth Circuit has not specifically addressed the issue, court[s] in the Fifth Circuit have held that consumers can bring private suits for violations of § 1681s-2(b)." *Spencer v. Experian Info. Sols., Inc.*, No. 21-cv-393, 2022 WL 1271128, at *4 (E.D. Tex. Apr. 28, 2022) (citing *Paul v. Trans Union, LLC*, No. 20-cv-794, 2021 WL 3503393, at *4 (E.D. Tex. July 21, 2021), *R. & R. adopted*, 2021 WL 3487485, at *5 (E.D. Tex. Aug. 9, 2021)). "Indeed, while § 1681o creates a private right of action for negligent violations of the [FCRA], § 1681n provides a similar remedy for willful violations." *Id.*

A plaintiff must prove four elements to recover against a furnisher: "(1) the furnisher provided inaccurate credit information about Plaintiff to a CRA; (2) Plaintiff notified a CRA that this information in his or her credit report was inaccurate; (3) the CRA notified the furnisher of the dispute; and (4) after receiving this notice, the furnisher failed to conduct a reasonable investigation and provide notice to the CRA to correct the reporting errors." *Id.* (quoting *Schoch v. Wells Fargo Home Mortg.*, No. 16-cv-619, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *R. & R. adopted*, 2017 WL 2312079, at *1 (E.D. Tex. May 26, 2017)) (internal quotation marks omitted).

### 1.    Nationstar

In the Nationstar Motion (Dkt. 13), the Nationstar Defendants argue that there is "no cognizable claim" under the FCRA against Nationstar. Dkt. 13 at 2–6. Specifically, the Nationstar Defendants argue that Plaintiffs have failed to allege the second and third elements required to state a claim under Section 1681s-2(b): that Plaintiffs notified a CRA of the alleged dispute and the CRA in turn notified Nationstar of the dispute. *See* Dkt. 13 at 5. Plaintiffs respond that they "did provide the required notification of their dispute to Trans[ U]nion and Experian" and thus,

have met the elements of Section 1681s-2(b). Dkt. 16 at 3. The Court finds that Plaintiffs have alleged the second element but have not alleged the third element of their FCRA claim.

In the Complaint (Dkt. 1), Plaintiffs allege that they "requested confirmation/disputed this alleged account with Experian[,] . . . Equifax[,] and Trans Union and Experian[,] . . . Equifax[,] and Trans Union have confirmed that they are reporting it correctly as advised to [them] by [Nationstar]." Dkt. 1 at 8. This allegation satisfies the second element—Plaintiff notified a CRA that the account information in the credit report was inaccurate.

But Plaintiffs have not alleged the critical third element—that the CRAs notified Nationstar of the dispute. Plaintiffs instead base their FCRA claim on sending a direct dispute to Nationstar. *See* Dkt. 1 at 10, 12 ("Defendant received NOTICE OF DISPUTE *from* Plaintiff . . . ." (emphasis added)). In order to recover in a private suit against a furnisher under the FCRA, Plaintiffs will have to prove that a CRA notified Nationstar of the dispute because "[s]uch notice is necessary to trigger the furnisher's duties under Section 1681s-2(b)." *See Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) (citing 15 U.S.C. § 1681s-2(b)(1)). Accordingly, Plaintiffs cannot maintain their claims under the FCRA that are premised upon Nationstar receiving notice of the dispute from Plaintiff directly. Thus, Plaintiffs' FCRA claims against Nationstar should be dismissed.

### 2.    Bray and Marshall

In the Nationstar Motion (Dkt. 13), the Nationstar Defendants argue that dismissal of any FCRA claim asserted against Bray and Marshall is appropriate because "Plaintiffs have failed to allege personal participation by them." Dkt. 13 at 6. The Nationstar Defendants contend that Bray and Marshall, as corporate officers of Nationstar, cannot be held liable "for the acts or debts of the

corporation." *Id.* Plaintiffs respond that Bray and Marshall "had a fiduciary duty to investigate the issues raised" within the notices disputing the debt. *See* Dkt. 16 at 5–6.

In the Complaint (Dkt. 1), Plaintiffs contend that Bray, the CEO of Nationstar, and Marshall, the CFO of Nationstar, "received notice of dispute on June 23, 2023." Dkt. 1 at 9. This is the lone factual allegation asserted against Bray and Marshall and contains none of the required elements to state a claim under Section 1681s-2(b). Thus, Plaintiffs' allegation against Bray and Marshall is insufficient for the Court to be able to draw a reasonable inference that Bray and Marshall are liable for violating the FCRA. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, Plaintiffs' allegation against Bray and Marshall is insufficient to state a claim for relief and should be dismissed.

The Court further finds that Plaintiffs cannot state a FCRA claim against Bray and Marshall because there are no facts tending to show that Bray and Marshall had any personal participation in the reporting of Plaintiffs' credit information. The Nationstar Defendants assert that under Texas law, a corporate officer is not liable for the acts or debts of the corporation and can only be personally liable for the tortious acts which he "directs or participates in during his employment." Dkt. 13 at 6–7 (quoting *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984)). While this is true, the FCRA is a federal statute and thus, the relevant question is whether corporate officers are entities that can be subject to liability under the FCRA.

"The requirements of the FCRA are imposed on three types of entities: [CRAs], users of consumer reports, and furnishers of information to [CRAs]." *Ferguson v. Innovate Loan Servicing Corp.*, No. 18-cv-3071, 2018 WL 5260065, at *1 (N.D. Ga. July 31, 2018) (citing *Bath v. Boundy*, No. 18-cv-384, 2018 WL 3382934, at *2 (D. Colo. June 12, 2018), *R. & R. adopted*, 2018 WL

4368677 (D. Colo. Aug. 6, 2018)), *R. & R. adopted*, 2018 WL 8731536 (N.D. Ga. Oct. 24, 2018). Here, Plaintiffs seek to hold Defendants responsible as furnishers of information. *See* Dkt. 1 at 9, 11. Accordingly, for Bray and Marshall to be liable under the FCRA, Bray and Marshall must have been acting as furnishers of information. The FCRA does not define the term "furnishers of information" within Section 1681a; however, the term "furnisher" is defined within the FCRA subchapter of the Code of Federal Regulations as "an entity that furnishes information relating to consumers to one or more [CRAs] for inclusion in a consumer report." 16 C.F.R. § 660.2. Moreover, courts in the Fifth Circuit have defined the term "furnisher of information" as "an entity [that] transmits information concerning a particular debt owed by a consumer to a [CRA]." *Budri v. FirstFleet Inc.*, No. 19-cv-409, 2019 WL 5587181, at *12 (N.D. Tex. Sept. 20, 2019) (quoting *Alam v. Sky Recovery Servs., Ltd.*, No. 08-2377, 2009 WL 693170, at *4 (S.D. Tex. Mar. 13, 2009)), *R. & R. adopted*, 2019 WL 5579971 (N.D. Tex. Oct. 29, 2019).

Here, Plaintiffs have not alleged that either Bray or Marshall provided information to the CRAs. Instead, Plaintiffs allege that Nationstar provided the disputed information to the CRAs. *See id.* at 3–8. Indeed, Plaintiffs attach the credit reports for the each of the months for which Plaintiffs allege that Nationstar reported inaccurate information. *See* Dkts. 1-10–13. The credit reports confirm that Nationstar was the entity providing the information to the CRAs, not Bray or Marshall. *See* Dkts. 1-10 at 3–4; 1-11 at 2; 1-12 at 2; 1-13 at 2–4. It appears the Plaintiffs have named Bray and Marshal solely because of their status as corporate officers of Nationstar. The FCRA "does not allow for liability for officers of . . . furnishers solely because they serve as officers for corporate defendants." *Ferguson*, 2018 WL 5260065, at *1 (collecting cases).

In the Response (Dkt. 16), Plaintiffs argues that Bray and Marshall "knowingly acted through either or all, a successor, individually in his official capacity as CEO and CFO of

[Nationstar], an ens legis being used to conceal fraud and ignored the requests of the Plaintiffs," further indicating their intent to hold Bray and Marshall liable solely because they serve as officers of Nationstar. *See* Dkt. 16 at 6.

Because Plaintiffs do not allege any facts tending to show that Bray or Marshall had any personal involvement in the furnishing of information, Plaintiffs' claims against Bray and Marshall should be dismissed. *See Ferguson*, 2018 WL 5260065, at *1 (dismissing the plaintiff's claims against corporate officers of a furnisher of information because she did "not allege any facts tending to show that the [corporate officers] had any specific involvement in this furnishing of their credit information or did anything other than act as [corporate ]officers"); *see also Bath*, 2018 WL 3382934, at *3 ("To the extent [the] [p]laintiff is attempting to hold [the corporate officer] liable based solely on his role as CEO of Experian, [p]laintiff's FCRA claim fails."); *Robinson v. Peck*, No. 17-cv-223, 2017 WL 1399844, at *1 (N.D. Ohio Apr. 19, 2017) ("The complaint does not allege facts suggesting [the corporate officer] had any personal involvement in handling disputes the plaintiff may have had with Trans Union regarding entries on his credit report, and 'individual defendants cannot be held liable [under the FCRA] solely because they are the chief executive officers' of a [CRA]." (citations omitted)).

### 3. Barrett Daffin

In the Second Barrett Daffin Motion (Dkt. 57), Barrett Daffin argues that Plaintiffs' FCRA claims against them must be dismissed pursuant to the "doctrine of attorney immunity" because "Barrett Daffin was retained as legal counsel to assist [Nationstar] with the [non-judicial] foreclosure of the Property," and all of their conduct was "undertaken in their capacity as attorneys." Dkt. 57 at 4. Plaintiffs respond that "[t]he attorney immunity doctrine is limited to the

lawyer's provision of legal services" and not when he "provides business services to a client." Dkt. 65 at 5.

The Court generally agrees with Barrett Daffin that under Texas law "[a]ttorneys are . . . immune from suits . . . if the action arises out of the duties involved in representing a client," and more specifically "when acting as foreclosure counsel, an attorney's conduct undertaken as part of the discharging duties in representing the client is not actionable." *See* Dkt. 57 at 4–6; *see also Vallez v. Harding*, No. 22-cv-1377, 2023 WL 2583929, at \*2 (W.D. Tex. Mar. 20, 2023) (citation omitted). However, the FCRA is a federal statute and thus, the Court finds that the relevant question is whether attorneys, executing a non-judicial foreclosure, are entities that are subject to liability under this specific statute.

As mentioned above, "[t]he requirements of the FCRA are imposed on three types of entities: [CRAs], users of consumer reports, and furnishers of information to [CRAs]." *Ferguson*, 2018 WL 5260065, at \*1; *see supra* Section III.A. Here, Plaintiffs seek to hold Defendants responsible as furnishers of information. *See* Dkt. 1 at 9, 11. Accordingly, for Barrett Daffin to be liable under the FCRA, Barrett Daffin must have been acting as a furnisher of information. Plaintiffs have not alleged any facts tending to show that Barrett Daffin provided information to the CRAs for inclusion in Plaintiffs' credit report. Instead, Plaintiffs allege that Barrett Daffin served Plaintiffs with the "Notice of Acceleration and Notice of [Substitute] Trustee's Sale," which notified Plaintiffs that a non-judicial foreclosure for the Property was scheduled to take place on September 5, 2023. Dkt. 1 at 7. Because Plaintiffs do not allege any facts tending to show that Barrett Daffin acted as a furnisher of information to the CRAs, Plaintiffs' claims against Barrett Daffin should be dismissed.

**B.**     **The FDCPA Claim**

In the Complaint (Dkt. 1), Plaintiff alleges that Defendants, acting as debt collectors, violated Sections 1692e and 1692g of the FDCPA. Dkt. 1 at 14–21. "To state a claim under the FDCPA, the plaintiff must show: (1) he was the object of collection activity arising from a consumer debt; (2) that the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Polk v. MVConnect, LLC*, No. 21-cv-75, 2022 WL 1747000, at *2 (S.D. Tex. May 31, 2022) (citing *Douglas v. Select Portfolio Servicing Inc.*, No. 14-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015)). Under the FDCPA, a debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

**1.**     **Nationstar**

In the Nationstar Motion (Dkt. 13), the Nationstar Defendants argue that there is "[n]o cognizable claim" against Nationstar under the FDCPA because Nationstar is the current mortgage servicer of the mortgage and mortgage servicers are not considered debt collectors under the FDCPA. Dkt. 13 at 6. Plaintiffs respond by "object[ing] to admitting that Nationstar . . . is [the] current servicer of their mortgage loan." Dkt. 16 at 4. The Nationstar Defendants replied that "the documents adduced by Plaintiffs themselves (attached to the Complaint) demonstrate that Nationstar is the loan servicer" and thus, "Plaintiffs cannot allege any facts that would support a conclusion that Nationstar is a debt collector within the meaning of the FDCPA." Dkt. 20 at 4–5. The Court agrees with Defendants.

"Mortgage servicers are not considered 'debt collectors' under the FDCPA." *Janos v. Wells Fargo Bank, N.A.*, No. 11-3953, 2013 WL 1789304, at *2 (S.D. Tex. Apr. 26, 2013) (first citing *Montgomery v. Wells Fargo Bank, N.A.*, 459 F. App'x 424, 428 n.1 (5th Cir. 2012); and then citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also Capistrano v. Bank of N.Y. Mellon*, No. 16-cv-871, 2017 WL 1758052, at *6 (E.D. Tex. Apr. 3, 2017), *R. & R. adopted*, 2017 WL 1739961 (E.D. Tex. May 3, 2017) (finding that mortgage servicers are not debt collectors within the meaning of FDCPA). The documents attached to the Complaint (Dkt. 1) show that Nationstar became the mortgage servicer for the Mortgage in December 2022. *See* Dkt. 1-3 at 2–3 (advising Plaintiffs that the Mortgage would be transferred to Nationstar on December 2, 2022); 1-15 at 2–3 (notifying Plaintiffs that the Mortgage was successfully transferred to Nationstar on December 2, 2022). The documents also show that upon request from Plaintiffs, Nationstar informed Plaintiffs that it "is the holder of the Note and Mortgage and as such can enforce all rights under those documents" and provided Plaintiffs with documentation supporting their status as the servicer, including the Note and Security Instrument and Notice of Servicing Transfer.[5] Dkt. 1-5 at 2–4. Accordingly, the Court finds that the documents attached to the Complaint (Dkt. 1) show that Nationstar is the mortgage servicer for the Mortgage. Thus, Nationstar cannot be considered a debt collector under the FDCPA, and Plaintiffs FDCPA claims against Nationstar should be dismissed.

### 2.    Bray and Marshall

In the Nationstar Motion (Dkt. 13), the Nationstar Defendants argue that the dismissal of any FDCPA claims asserted against Bray and Marshall is appropriate because "Plaintiffs have

---

[5] Moreover, the Court notes that Nationstar need not present the "wet-ink" Note to establish that the Note was validly assigned. "Texas recognizes assignment of mortgages . . . as valid and enforceable without production of the original, signed note." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013).

failed to allege personal participation by them." Dkt. 13 at 6. The Nationstar Defendants primary argument is that Bray and Marshall, as corporate officers of Nationstar, cannot be held liable "for the acts or debts of the corporation" and can only be personally liable for the tortious acts which they directed or participated in during their employment. *Id.* at 6–7. As addressed above, the Court generally agrees that this is the law in Texas, but FDCPA is a federal statute and thus, the relevant question is whether corporate officers are entities that can be subject to liability under the FDCPA. *See supra* Section III.A.2.

To be liable under the FDCPA, Bray and Marshall must be debt collectors as defined by the FDCPA. *See Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F. Supp. 3d 772, 782 (E.D. Tex. 2023) ("To plead a viable FDCPA claim, [the plaintiff] must allege that . . . the defendant is a debt collector defined by the FDCPA . . . ."). "[T]he FDCPA defines 'debt collector' as 'any *person* . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, *directly* or *indirectly*, debts owed or due . . . ." *Id.* at 784 (emphasis in original) (quoting 15 U.S.C. § 1692a(6)). Courts are split on the issue of whether a corporate officer can be held individually liable as a debt collector under the FDCPA without piercing the corporate veil. *Id.* (analyzing the split in authority and finding that a corporate officer "can be held liable as a debt collector under the FDCPA without piercing the corporate veil if they are involved—directly or indirectly—in debt collection activities"). Assuming, without deciding, that a corporate officer can be held liable as a debt collector without piercing the corporate veil, Plaintiffs have alleged no facts indicating that Bray or Marshall "regularly collect[ed] or attempt[ed] to collect, directly or indirectly" debts allegedly owed by Plaintiffs. *Id.* at 783. Moreover, Bray and Marshall are corporate officers of Nationstar, the mortgage servicer of the Mortgage, and "[m]ortgage servicers are not considered 'debt collectors' under the FDCPA."

*Janos*, 2013 WL 1789304, at *2 (first citing *Montgomery*, 459 F. App'x at 428 n.1; and then citing *Perry*, 756 F.2d at 1208); *see also supra* Section III.B.1. (recommending dismissal of the FDCPA claims against Nationstar because Nationstar is the mortgage servicer of the Mortgage and thus cannot be considered a debt collector under the FDCPA). Thus, Plaintiffs' FDCPA claims against Bray and Marshall should be dismissed.

### 3.    Barrett Daffin

In the Second Barrett Daffin Motion (Dkt. 57), Barrett Daffin argues that Plaintiffs' FDCPA claims against them must be dismissed pursuant to the "doctrine of attorney immunity" because "Barrett Daffin was retained as legal counsel to assist [Nationstar] with the [non-judicial] foreclosure of the Property," and all of their conduct was "undertaken in their capacity as attorneys."[6] Dkt. 57 at 4. Plaintiff asserts that "Congress removed the attorney exemption in 1986," and "[l]awyers who regularly conduct foreclosures to collect consumer debt are 'debt collectors' for purposes of the FDCPA." Dkt. 65 at 9. As addressed above, the Court generally agrees with Barrett Daffin that under Texas law, attorneys are immune from suit when acting as foreclosure counsel, but the FDCPA is a federal statute and thus, the Court finds that the relevant question is whether attorneys, executing a non-judicial foreclosure, are entities that are subject to liability under the FDCPA. *See supra* Section III.A.3; *see also Rainey v. Mfrs. & Traders Tr. Co.*, No. 23-cv-272, 2024 WL 3378406, at *5 (S.D. Tex. July 10, 2024) ("[T]he attorney immunity doctrine does not apply to . . . FDCPA claim[s].").

---

[6] Barrett Daffin also argues that "Plaintiffs allege violations of the FDCPA based on a letter dated June 30, 2023" and thus, "[a]ny FDCPA claim based on this letter is time barred" because "[a] FDCPA claim must be brought within one year of the date when the alleged violation occurs." Dkt. 57 at 6–7. The Court notes that the Complaint (Dkt. 1) was filed on August 24, 2023, not even two months after the letter that Barrett Daffin identifies as the basis for Plaintiffs' claims. *See* Dkt. 1. Accordingly, the Court will not dismiss Plaintiffs' FDCPA claim against Barrett Daffin on the basis that it is time barred.

Under the FDCPA, Barrett Daffin must have been acting as a debt collector to be held liable. *See Griffin*, 680 F. Supp. 3d at 782. "[A] law firm engaged in nothing more than a non-judicial foreclosure is not subject to the FDCPA, except with respect [to ]§ 1692f(6)." *Barber v. S.D.B. Dev., L.P.*, No. 21-cv-539, 2022 WL 3205611, at *3 (E.D. Tex. June 23, 2022) (citing *Obduskey v. McCarthy & Holthus, LLP*, 586 U.S. 466, 1038 (2019)), *R. & R. adopted*, 2022 WL 3162344 (E.D. Tex. Aug. 5, 2022). Here, Barrett Daffin sent the Notice of Acceleration and Notice of [Substitute] Trustee's Sale to Plaintiffs, wherein Barrett Daffin notified Plaintiffs that it was acting on behalf of Nationstar and pursuant to Texas Property Code § 51.0025 to initiate the non-judicial foreclosure proceedings on the Property. *See* Dkt. 1-9 at 2–7; *see also* Dkt. 1-23 at 2 ("[Nationstar] has retained our firm to pursue a nonjudicial foreclosure under a Deed of Trust against the [Property]."). Plaintiffs have not alleged that Barrett Daffin has taken any action in relation to the Property other than initiating the non-judicial foreclosure proceedings. Further, in the Complaint (Dkt. 1), Plaintiffs allege violations of Sections 1692g and 1692e. *See* Dkt. 1 at 17–22. Plaintiffs make no allegations concerning Section 1692f(6), the only section of the FDCPA for which a law firm engaged in a non-judicial foreclosure may incur liability. Thus, Plaintiffs' FDCPA claims against Barrett Daffin should be dismissed.

### 4.    Leave to Amend

A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Further, a *pro se* litigant should generally be offered an opportunity to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court

can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 20-cv-948, 2021 WL 2232052, at *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021).

In their response to the Nationstar Motion (Dkt. 13), Plaintiffs argue that they should be given leave to amend the Complaint (Dkt. 1) to include the necessary factual allegations to satisfy the pleading deficiency as to elements two and three of their FCRA claim. *See* Dkt. 16 at 3. Plaintiffs assert that they "did provide the required notification of their dispute to Trans[ U]nion and Experian," and Nationstar received notice of the dispute from Trans Union. *Id.* Plaintiffs further assert that they received the results of the investigations between Trans Union, Experian, and Nationstar. *Id.* Based on these assertions, it appears Plaintiffs can cure the deficiency in their pleadings regarding the third element of their FCRA claim against Nationstar. *See supra* Section III.A.1. In its reply, Nationstar argues that any amendment by Plaintiffs as to elements two and three would be futile because they would not be able to satisfy the first element of their FCRA claim—Nationstar provided inaccurate credit information about Plaintiffs to a CRA. *See* Dkt. 20 at 2–4. This is the first time that Nationstar challenges the first element of Plaintiffs' FCRA claim. *See id.* Because Nationstar did not raise this challenge in the Nationstar Motion (Dkt. 13), the Court has not evaluated the sufficiency of Plaintiffs' allegations regarding the first element of their FCRA claim. Accordingly, the Court will not deny Plaintiffs' request on a basis not raised by the Nationstar Motion (Dkt. 13). Therefore, Plaintiffs should be given leave to amend the Complaint (Dkt. 1) to address the deficiencies found regarding the third element of their FCRA claim against Nationstar. In preparing their amended complaint, Plaintiffs should also assert all of the facts necessary to allege each of the four elements required for their FCRA claim against Nationstar.

In their response to the Second Barrett Daffin Motion (Dkt. 57), Plaintiffs assert that Barrett

Daffin violated Section 1692f(6) of the FDCPA because they "had no present right to possession of the Plaintiffs['] home by way of collateral through an enforceable security interest." Dkt. 65 at 12. As identified above, Section 1692f(6) is the only FDCPA provision under which a law firm who engages in only nonjudicial foreclosure proceedings may face liability. *See Obduskey*, 586 U.S. at 477. Accordingly, the Court finds that it is appropriate to allow Plaintiffs leave to amend their claim against Barrett Daffin to the extent that they can allege facts supporting a violation by Barrett Daffin of Section 1692f(6).

Plaintiffs did not request leave to amend in regard to the other claims asserted in the Complaint (Dkt. 1). However, the Court finds it appropriate to allow Plaintiffs leave to amend their claims against Bray and Marshall to the extent they can allege facts that either Bray or Marshall were personally involved in furnishing information to the CRAs. Plaintiff should not reassert claims against Bray and Marshall if they seek to hold Bray and Marshall liable solely in their capacity as corporate officers of Nationstar.

The Court finds that leave to amend would be futile as to Plaintiffs' FCRA claim against Barrett Daffin because they did not act as furnishers of information. The Court also finds that amendment would be futile as to Plaintiffs' FDCPA claims against the Nationstar Defendants because they did not act as debt collectors. Therefore, Plaintiffs should not be given leave to amend the Complaint (Dkt. 1) as to these claims.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends the First Barrett Daffin Motion (Dkt. 15) be **DENIED AS MOOT**.

The Court further recommends that the Nationstar Motion (Dkt. 13) and the Second Barrett Daffin Motion (Dkt. 57) be **GRANTED**, and Plaintiffs' claims against Barrett Daffin under the

FCRA and against Nationstar, Bray, and Marshall under the FDCPA be **DISMISSED WITH PREJUDICE**.

The Court further recommends that Plaintiffs' claims against Nationstar, Bray, and Marshall under the FCRA and Barrett Daffin under the FDCPA be **DISMISSED WITHOUT PREJUDICE**, and that Plaintiff be given leave to file an amended complaint with respect to these claims no later than fourteen (14) days after the entry of the Memorandum Adopting Report and Recommendation, if any. If Plaintiffs fail to timely file an amended complaint, Plaintiffs' claims against Nationstar, Bray, and Marshall under the FCRA and Barrett Daffin under the FDCPA should be dismissed with prejudice.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 25th day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE